**Raji GUYTON, Social Security No. 013–58–5913, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 97–10704–WGY.**

United States District Court, D. Massachusetts.

Aug. 31, 1998.

---

1. On September 29, 1997 Kenneth S. Apfel was sworn in as the new Commissioner. Pursuant to Fed.R.Civ.P. 25(d)(1), Apfel is substituted as a party defendant for his predecessor in office, Shirley Chater. *See* Fed.R.Civ.P. 25(d)(1) ("the action does not abate and the officer's successor is automatically substituted as a party"); *see also,* 42 U.S.C. 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security.").

MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action under Sections 205(g) and 1361(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). The plaintiff, Raji Guyton ("Guyton"), seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("the Commissioner") denying Guyton's applications for Social Security Childhood Disability Insurance Benefits ("CDI benefits"), 42 U.S.C. § 423, and Supplemental Security Income ("SSI benefits"), 42 U.S.C. § 1381(a).

Guyton argues that the Commissioner's decision is legally erroneous and not based upon substantial evidence. Accordingly, Guyton asks this Court either to reverse and set aside the Commissioner's decision, or to remand his claim. He seeks reasonable attorneys fees and costs as well.

## I. BACKGROUND

Guyton, born April 9, 1968, is a 30 year old man who currently lives alone in Roxbury, Massachusetts. (Tr. 82, 84.) Guyton has an eighth grade education and no past relevant work experience. (Tr. 85.) He has been in foster care and various institutional settings since he was twelve years old, including a five year period at the Massachusetts Correction Institution at Cedar Junction ("MCI–Cedar Junction"). (Tr. 70, 215–216.)

On August 30, 1993 Guyton applied for CDI and SSI benefits claiming that he was disabled since August 9, 1983 due to spondylosis[2], dyslexia, personality disorder, a "loose bone" at L5–S1, and arthritis. (Tr. 70.) The Social Security Administration denied Guyton's application for benefits initially on November 1, 1993, and again upon reconsideration on March 3, 1994. *Id.* Following Guyton's timely request, an oral hearing was held on June 15, 1995 before Administrative Law Judge Lynette Diehl Lang. *Id.* An attorney from Greater Boston Legal Services represented Guyton at the hearing and con-

Taramattie Doucette, Greater Boston Legal Services, Boston, MA, for Raji Guyton.

Rayford A. Farquhar, U.S. Attorney, Boston, MA, for Shirley Chater, Kenneth S. Apfel.

---

2. Spondylosis is defined as "dissolution of a vertebra." Dorland's Illustrated Medical Dictionary 1567 (27th ed.1988).

tinues to represent him in the current proceedings. *Id.*

On August 25, 1995, the Administrative Law Judge issued a decision holding that 1) Guyton did not meet the definition of a person disabled since childhood, and therefore was not eligible for CDI benefits under the Social Security Act, and 2) Guyton was also not eligible for SSI benefits under the Social Security Act. (Tr. 74.) Although the Administrative Law Judge found that Guyton suffered from grade 1 spondylolisthesis,[3] chronic back pain, and a mild learning disorder, she concluded that Guyton still retained the residual functional capacity to perform work of a light exertional nature, and that his nonexertional limitations did not significantly limit his ability to engage in substantial gainful activity. (Tr. 73–74.)

Guyton appealed the decision to the Commissioner's Appeals Council, submitting additional medical records at that time. (Tr. 6–16) The Appeals Council subsequently denied Guyton's request for review on January 17, 1997, rendering the decision of the Administrative Law Judge the final decision of the Commissioner. (Tr. 3–4.) On March 14, 1997, Guyton filed a timely appeal of this decision with this Court.

Guyton claims that his disability began in 1983, when, at the age of fourteen, he was involved in a motor vehicle accident that injured his back.[4] (Tr. 71.) After the accident, Guyton experienced lower back pain that lasted for about a year, remitted completely, and then returned approximately five years later while he was serving time.[5] *Id.* He has described the pain as "like someone sticking me with a knife" and claimed that it "hurts real bad all over." (Tr. 95.) Guyton

has asserted that the pain makes it difficult for him to sleep, to get out of bed in the morning, to climb the stairs to go to the bathroom at night, and to tie his shoes and pull on his pants because it is painful for him to bend over. (Tr. 95–97.)

Several sources have participated in Guyton's medical treatment. While at MCI–Cedar Junction, relevant medical records from May 1988 through October 1992 indicate that a lumbrosacral spine examination with obliques was conducted on September 25, 1990, revealing bilateral spondylosis at L5 but no evidence of spondylolisthesis. (Tr. 71.) A lumbar spine x-ray was performed at MCI–Cedar Junction on August 20, 1992, which indicated grade I L5–S1 spondylolisthesis. *Id.* Guyton was fitted with a back brace in prison and prescribed medication on several occasions to help remedy his back pain. (Tr. 93–95.) On October 4, 1993, Guyton underwent a neurological consultative examination with Dr. Negagopal Venna ("Dr.Venna"). (Tr. 208.) Additional x-rays were also taken of Guyton's back, indicating "[g]rade 1 spondylolisthesis of L5 over S1 with bilateral spondylolisthesis. Degenerative disk disease at the level L5/S1." (Tr. 212.) Following his release from prison, Guyton saw Dr. John A. Rich on several occasions at a walk-in clinic at Boston City Hospital. (Tr. 222, 228.) Finally, Guyton underwent a psychological analysis on October 7, 1993, with Nicholas Johnson, Ph.D., at the request of the Disability Determination Service.[6] (Tr. 213.) A psychiatric review and a mental residual functional capacity assessment were completed by the Social Security Administration on October 20, 1993 and February 4, 1994. (Tr. 112–124.)

---

**3.** Spondylolisthesis is defined as "forward displacement of one vertebra over another." *Dorland's Illustrated Medical Dictionary* 1567.

**4.** Guyton produced no medical records from the 1983 injury; the earliest available medical records are from MCI–Cedar Junction in 1988, when Guyton was 20 years old. (Tr. 72.)

**5.** The record is unclear regarding the events that triggered the reoccurrence of Guyton's back pain. *Compare* Dr. Venna's report (Tr. 208) (stating that "the symptoms ... recurred while he was in prison.... At that time the patient relates he was beaten up by the guards in prison

and had many blunt injuries to the lower back, and ever since, the back has been bothering him on a continuous daily basis.") *with* Dr. Johnson's report (Tr. 216) (indicating that Guyton reported back pain dating back to the motor vehicle accident which was "apparently worsened by more recent kicks in the back").

**6.** Although Guyton's attorney stated at the oral hearing that Guyton had received "psychiatric treatment" while at MCI–Cedar Junction, the record contains no reports pertaining to such treatment.

## II. STANDARD OF REVIEW

This Court's review of a Social Security disability benefit determination is limited under 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *See also Durant v. Chater,* 906 F.Supp. 706, 710 (D.Mass.1995). The First Circuit has defined "substantial evidence" as " '[when] a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.' " *See Irlanda Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 [1st Cir.1981] ). "[I]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." *Id.* Accordingly, this Court must affirm the Commissioner's denial "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *See Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987) (citing *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 [1st Cir. 1981] ), *cert. denied sub nom., Rodriguez–Pagan v. Bowen,* 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988).

■ As the claimant, Guyton bears the "heavy initial burden" of establishing through credible evidence that he was disabled within the meaning of the Social Security Act. *Mandziej v. Chater,* 944 F.Supp. 121, 126 (D.N.H.1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 146–47, 107 S.Ct. 2287 [1987] ); *see also, Santiago v. Secretary of Health and Human Services,* 944 F.2d 1, 5 (1st Cir.1991). A "disability" is defined under the Social Security Act as "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Section 423(d)(2)(A) further provides:

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

■ Evidence of an impairment is not in itself enough to warrant an award of benefits; a claimant must also demonstrate that the impairment prevents him from engaging in any substantial gainful activity. *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1120 (1st Cir.1986); *Durant,* 906 F.Supp. at 710.

■ In order for Guyton to be eligible for childhood disability benefits, he must prove that "[h]e is under a disability (as defined in § 423(d) of this title) which began before he attained the age of 22." 42 U.S.C. § 402(d)(1)(B)(ii). The disability must be continuous from before age 22 until the claimant's application for benefits. *See Suarez v. Secretary of Health and Human Services,* 755 F.2d 1, 3 (1st Cir.1985), *cert. denied sub nom., Suarez v. Heckler,* 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985), *reh'g denied,* 474 U.S. 1097, 106 S.Ct. 872, 88 L.Ed.2d 911 (1986); *see also Miller v. Shalala,* 859 F.Supp. 297, 300 (S.D.Ohio 1994) (citing *Suarez* in support of the proposition that the " 'continuous disability' interpretation of the statute appears to be a long-standing policy of the Secretary, and it has been accepted as an appropriate interpretation by numerous courts of appeal").

## III. ANALYSIS

### A. Disability Determination

#### 1. The Commissioner's Evaluation of Claimant's Impairments

Based upon an evaluation of Guyton's medical records and the testimony given at the oral hearing, the Administrative Law Judge found that "claimant retains the residual functional capacity to perform work of a light exertional nature," (Tr. 72), and therefore was not disabled within the meaning of the Social Security Act. Guyton asserts that 1)

there is no substantial evidence to support the Commissioner's conclusion, 2) the Administrative Law Judge misapplied the pain standard as articulated in *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986), and 3) the Administrative Law Judge failed properly to consider the combination of Guyton's exertional and non-exertional impairments, particularly his chronic back pain and his mental condition.

The Administrative Law Judge was required to follow the five-step inquiry process set out in 20 C.F.R. § 404.1520 in making the disability determination.[7] Because she found that step one was satisfied, as there was no evidence that Guyton was engaged in substantial gainful activity since the filing of his application, the inquiry proceeded to the second step. There, the Administrative Law Judge had to determine whether Guyton's impairment(s) was "severe," defined as "any impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

In assessing Guyton's back condition, the Administrative Law Judge relied primarily upon Dr. Venna's neurological consultative examination report. Dr. Venna's report notes that he found "muscle bulk to be normal," and that there were "no involuntary movements." (Tr. 209–210.) Although Dr. Venna found that Guyton "has a chronic low back pain syndrome," he also stated that "I do not see any difficulties in his abilities to sit, stand, or walk. However, in view of his symptoms, the patient will have restrictions in activities requiring heavy bending and heavy lifting type of activities." (Tr. 210.)

The record indicates that the Administrative Law Judge also considered Guyton's mental impairments in the evaluation. Following her review of Dr. Johnson's psychological evaluation, the Administrative Law Judge concluded that Guyton's alleged mental disability amounted only to a "mild learning disorder." (Tr. 73.)

Finding that Guyton's impairments did, to some extent, limit his ability to do basic work activities, analysis proceeded to the third step of the evaluation procedure. Without discussion, the Administrative Law Judge concluded that Guyton's impairments neither met nor equaled a listed impairment. As Guyton had no past relevant work, the Administrative Law Judge skipped over the fourth step in the sequential analysis and proceeded to determine whether Guyton's impairments, given his residual functional capacity, prevented him from doing any other work.

■ At step five in the sequential process for evaluating disability, "the burden shifts to the Secretary to show the existence of other jobs in the national economy that the claimant can nonetheless perform." *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 2 (1st Cir.1982) (citing *Torres v. Secretary of Health and Human Services*, 677 F.2d 167, 168 [1st Cir.1982]; *Pelletier v. Secretary of Health, Education and Welfare*, 525 F.2d 158 [1st Cir.1976] ). Where the Grid is applicable, its application satisfies this burden. Where the Grid provides guidance

7. The five-step disability determination inquiry mandated by 20 C.F.R. § 404.1520 can be summarized as follows:
(1) whether the claimant is engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents the claimant from performing past relevant work; and,
(5) whether the impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520; *see also, Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982) (describing the five step process).
Analysis under the five-step process moves sequentially, ending as soon as a determination of a claimant's disability *vel non* is made. *See* 20 C.F.R. § 404.1520(a) ("[i]f we can find that you are disabled or not disabled at any point in the review, we do not review your claim further").

The five step evaluation procedure followed under § 404 (applicable to CDI benefit claims) is exactly the same as the evaluation procedure followed under section 416 (applicable to SSI claims). *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (citing both § 404 and 416 together in its analysis of claimant's entitlement to social security benefits). Although this Court cites only to § 404 in its analysis of Guyton's claim, the analysis would be the same under § 416, and would reach the same results.

only, the Administrative Law Judge must conduct an individualized assessment in determining whether work exists in the national economy in significant numbers either in the region where the claimant lives or in several other regions of the country that the claimant can perform. In making this assessment, the Administrative Law Judge "will take administrative notice of reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1566(d). The Administrative Law Judge may use the services of a vocational expert but is not required to do so. *Id.* at (e).

■ Where a claimant has a combination of exertional and nonexertional impairments, the Grid is applicable only after the Administrative Law Judge determines "that claimant's non-exertional impairments did not significantly affect claimant's ability to perform the full range of jobs requiring sedentary work." *Rodriguez Pagan v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir.1987) (citing cases); *see also Sherwin,* 685 F.2d at 2. It is permissible for the Administrative Law Judge to rely on the Grid where she concludes that these nonexertional impairments or limitations "impose no significant restriction on the range of work a claimant is exertionally able to perform." *Ortiz v. Secretary of Health and Human Services,* 890 F.2d 520, 524 (1st Cir. 1989) (citing cases). Moreover, "[i]f a nonstrength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence." *Id.* at 524–25.

■ In this case, the Administrative Law Judge initially referred to the Grid for the purpose of providing guidance on the issue of Guyton's disability. In her decision, she writes "[c]onsidering only claimant's exertional limitations, together with his age, education, and lack of work experience, 20 CFR Part 404, Subpart P, Appendix 2, Rule 202.17 suggests a finding of not disabled." (Tr. at 73.) This use of the Grid for guidance was proper. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2);[8] *see also* 20 C.F.R. § 404.1569a(d) (stating that where a claimant has a combination of exertional and nonexertional limitations that affect his ability to meet the strength and demands of a job, the Grid does not apply but, instead, "provides a framework to guide our decision"); *Sherwin,* 685 F.2d at 4 ("the Grid will offer only guidance—it will not determine 'disability'—in borderline cases or where nonexertional, or additional, disabilities are at issue"). Upon determining that Guyton's "nonexertional limitations did not significantly affect his ability to engage in substantial gainful activity," (Tr. 73), the Administrative Law Judge appears then to have relied exclusively on the Grid in determining that he was not disabled as a significant number of jobs in the national economy exist that he can perform. Although this conclusion is permissible, the failure of the Administrative Law Judge adequately to discuss Guyton's mental impairment and its effect on his residual functional capacity and the occupation base is a sufficient basis for remand.

In *Ortiz,* the First Circuit made clear that although it is permissible to use the Grid where there is a nonexertional limitation that does not significantly affect the claimant's ability to engage in substantial gainful activity, the Administrative Law Judge making such a determination should provide sufficient evidentiary support in the opinion "in order to avoid needless remands for subsid-

---

8. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2) provides, in part, that:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

iary fact-finding." *Ortiz,* 890 F.2d at 528. In that case, unlike here, while moderate limitations were identified in the claimant's ability to conform to some of the demands of the workplace, *id.* at 527, at least one of the doctors who evaluated the claimant made a finding of no significant limitation in each of the basic mental demands of unskilled work. *Id.* The court concluded that though the limitations might result in at least a marginal erosion of the occupational base, "the claimant's capacity for the full range of light work was not significantly compromised by his additional nonexertional limitations." *Id.* In this case, this Court is more hesitant to reach this conclusion where there are at least some moderate restrictions imposed by Guyton's mental impairment on his ability to meet the basic mental demands of unskilled work and to conform to the demands of the workplace.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting." S.S.R. 85–15. The Mental Residual Functional Capacity Assessment conducted by the Social Security Administration determined that Guyton had no significant limitation in his ability to understand, carry out, and remember simple instructions or to deal with changes in a routine work setting. (Tr. 112–13.) On the other hand, this assessment did find Guyton to be moderately limited in his ability to respond appropriately to supervision and coworkers as well as in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[9] (Tr. 113.) Without discussing this Mental Residual Functional Capacity Assessment or conducting

her own, the Administrative Law Judge determined that Guyton's nonexertional limitations did not significantly affect his ability to engage in substantial gainful activity. (Tr. 74.)

■ Under the Social Security Disability regulations, a claimant for disability benefits bears the burden of providing medical evidence to show his or her impairment, its severity, and its duration. *See* 20 C.F.R. § 404.1512(c). At the time of the hearing, Guyton's administrative record contained 1) the psychological evaluation of Dr. Johnson dated October 7, 1993; 2) the Psychiatric Review of the Social Security Administration dated October 10, 1993; and 3) the Mental Residual Functional Capacity Assessment of the Social Security Administration dated October 20, 1993. Each of these documents constitutes medical evidence as defined by 20 C.F.R. § 404.1513. The Social Security Administration is to consider the impairments that an applicant claims to have or about which the Social Security Administration has received evidence. *See* 20 C.F.R. § 404.1512(a). Therefore, the Administrative Law Judge, in this case, was required to consider Guyton's mental impairments in making her disability determination.

■ In this case, the Administrative Law Judge has failed to conduct the required assessment of Guyton's mental impairment. The Administrative Law Judge decision contains limited discussion of Guyton's mental impairment. (Tr. 71.) This discussion appears to minimize the condition and takes no account of the findings made regarding Guyton's mental disorder in Dr. Johnson's psychological evaluation or the psychiatric review conducted by the Social Security Administration. (Tr. 116–124.) The mental impairment assessment under the Social Security Act is the same as the assessment for

---

9. Furthermore, this mental assessment did conclude that Guyton was also moderately limited in the following areas:
    1. The ability to understand and remember detailed instructions;
    2. The ability to carry out detailed instructions;
    3. The ability to maintain attention and concentration for extended periods;

    4. The ability to work in coordination with or proximity to others without being distracted by them;
    5. The ability to interact appropriately with the general public;
    6. The ability to ask simple questions or request assistance.
(Tr. 112–14.)

physical impairment. 20 C.F.R. § 404.1520a(b)(1). To determine whether a mental impairment is severe, the Administrative Law Judge is to evaluate four areas of mental function that the Social Security Administration has deemed essential to work: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) deterioration or decompensation in work or work-like settings. *Id.* at (b)(3). If a mental impairment is severe but neither meets nor equals a listed impairment, the Administrative Law Judge must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(c)(3). The Administrative Law Judge's mental impairment assessment "must show the significant history, including examination, laboratory findings, and functional limitations that [the Administrative Law Judge] considered in reaching conclusions about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(c)(4).

■ Here, the Administrative Law Judge decision fails to provide this kind of a rationale or to conduct the mental impairment analysis outlined in 20 C.F.R. § 404.1520a. In this case, the Administrative Law Judge relies on Dr. Johnson's conclusion that Guyton has a "mild learning disability of largely emotional origin without signs of organic damage," (Tr. 71), to support her finding that Guyton's nonexertional limitations are neither severe nor preclude him from engaging in substantial gainful activity. (Tr. 74.) There is no consideration of Dr. Johnson's conclusion that "Mr. Guyton would undoubtedly qualify for some of Personality Disorder diagnosis and/or Intermittent Explosive Disorder. He has some quite sociopathic attitudes...." (Tr. 216–17.) Also, there is no consideration of the Social Security Administration's Psychiatric Review Technique which indicates that Guyton suffers from a severe mental impairment based on mental retardation and a personality disorder. (Tr. 116–124.)

■ Thus, this case must be remanded to the Administrative Law Judge to conduct a mental impairment assessment as required by the Social Security Act and its attendant regulations. The Administrative Law Judge

is to conduct the appropriate assessment of whether there is other work that exists in significant numbers in the national economy that the claimant can perform. It is incumbent upon the Administrative Law Judge to determine the effect of Guyton's mental impairment on the size of the remaining occupational base of light unskilled work. The Administrative Law Judge can make this determination but referral to vocational resource may be helpful or necessary. *See* S.S.R. 85–15 ("The publications listed in §§ 404.1566 and 416.966 of the regulations will be sufficient vocational resources for relatively simple issues. In more complex cases, a person or persons with specialized knowledge would be helpful."); S.S.R. 83–14 ("Where [the Administrative Law Judge] does not have a clear understanding of the effects of additional limitations on the job base, the services of a [vocational specialist] will be necessary.").

2. *Evaluating the Claim of Disabling Pain*

■ In reviewing the decision to not accept Guyton's allegations of disabling back pain, "the credibility determination by the [Administrative Law Judge], who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health and Human Services*, 829 F.2d 192, 195 (1st Cir. 1987); *see also, Suranie v. Sullivan,* 787 F.Supp. 287, 290–91 (D.R.I.1992). The guidelines for the assessment of a claimant's subjective claims of disabling pain state that:

[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be

furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

The First Circuit has held that "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." *Dupuis v. Secretary of Health and Human Services*, 869 F.2d 622, 623 (1st Cir.1989) (citing *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 21 [1st Cir.1980]; *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 [1st Cir.1986] ); *accord Bianchi v. Secretary of Health and Human Services*, 764 F.2d 44, 45 (1st Cir.1985) ("The Secretary is not required to take the claimant's assertions of pain at face value.") (citing *Burgos Lopez v. Secretary of Health and Human Services*, 747 F.2d 37, 40 [1st Cir. 1984] ). Here, the Administrative Law Judge found "a substantial disparity between the claimant's allegations of pain and the objective medical signs of the record" noting specifically that "medical records from [MCI–Cedar Junction], [Dr. Venna], and [Dr. Rich] do not support the plaintiff's allegations of disabling pain." (Tr. 73.)

■ Where a claimant's complaints of pain are a significant factor limiting his ability to work, and those complaints are not fully supported by the medical evidence in the record, the Administrative Law Judge must look further. In accordance with *Avery*, the Administrative Law Judge reviewed Guyton's "Activities of Daily Living" and "Questionnaire on Pain" reports and "obtain[ed] detailed descriptions of daily activities by

directing specific inquiries about the pain and its effects to the claimant." *Avery*, 797 F.2d at 23 (quoting Secretary of Health and Human Services, Program Operations Manual System, DI T00401.570 [Aug. 1, 1985] ). The transcript from the oral hearing also indicates that the Administrative Law Judge conducted an appropriate *Avery* inquiry into Guyton's subjective complaints of pain,[10] (Tr. 95–104), before deciding that Guyton was capable of performing "light" work. (Tr. 73.)

■ In concluding that Guyton's subjective complaints of back pain did not constitute a disability under the Social Security Act, the Administrative Law Judge found his claims of pain not credible. (Tr. 73.) Where the Administrative Law Judge finds subjective evidence of pain not credible, "the Administrative Law Judge must make specific findings as to the relevant evidence [she] considered in determining to disbelieve the appellant." *DaRosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir.1986) (citing *Benko v. Schweiker*, 551 F.Supp. 698, 704 [D.N.H.1982] ). In this case, the Administrative Law Judge makes only a general reference to the record stating that "Claimant's testimony regarding pain and discomfort is not credible to the extent alleged in light of the evidence of record." (Tr. 74.) This finding does not satisfy the requirement of specific findings for credibility determinations. Although this Court finds that the Administrative Law Judge satisfied the requirements of *Avery*, the decision insufficiently explains the credibility determination. On remand, the Administrative Law Judge is to provide the requisite findings to support her credibility determination.

### 3. *The Treating Physician's Opinion*

■ This Court finds no error in the Administrative Law Judge's decision not to

---

**10.** The following factors must be considered in assessing the impact of the claimant's subjective allegations of pain on his residual functional capacity:

    1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
    2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
    3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    4. Treatment, other than medication, for relief of pain;
    5. Functional restrictions; and
    6. The claimant's daily activities.

*Avery*, 797 F.2d at 29 (appendix); *see also, Corchado v. Shalala*, 953 F.Supp. 12, 15–17 (D.Mass.1996).

give controlling weight to Guyton's treating physician, Dr. Rich. Although the Administrative Law Judge considered Dr. Rich a "treating source," see 20 C.F.R. § 404.1502,[11] she chose to rely upon Dr. Venna's assessment of Guyton's back impairment and did not credit Dr. Rich's statement that "at present this back disorder hinders the patient's ability to perform useful productive work." (Tr. 222, 288.) Likewise, the Appeals Council was not persuaded that the additional medical records Guyton submitted to bolster Dr. Rich's opinion would have altered the decision to not accept Dr. Rich's opinion.[12] (Tr. 3.)

While 20 C.F.R. § 416.927(d)(2) indicates that the opinion of a treating source is "generally" afforded "more weight," the Administrative Law Judge was not obligated automatically to accept Dr. Rich's conclusions. Section 416.927(d)(2) describes the manner in which the Administrative Law Judge and the Appeals Council[13] are to weigh medical evidence concerning a claimant's disability. In order for evidence from the treating source to receive "controlling weight," it must be 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion of a treating source fails to meet one of these two requirements, the Administrative Law Judge or the Appeals Council must then request additional evidence (if needed) and apply the following six factors "in determining the weight to give the opinion": 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the relevant evidence in support of the medical opinion; 4) the consistency of the medical opinions reflected in the record as a whole; 5) whether the medical provider is a special-ist in the area in which he renders his opinion; and 6) other factors which tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2)(i)–(d)(6). Additionally, the Administrative Law Judge and the Appeals Council are required to give "good reasons" regarding the "the weight [given to the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

The First Circuit has addressed the distinction between cases where the opinion of the treating source should be given "controlling" weight and when lesser weight should be ascribed, observing:

[the regulation] does not mandate assignment of some unvarying weight to every report in every case. The [Administrative Law Judge] is not required automatically to give controlling weight to any "treating" doctor's report, denominated as such. In some cases "controlling weight" may be assigned if the report meets the specified qualifications, and is not inconsistent with other substantial evidence. In other cases, the weight of a treating source's report is further evaluated in light of the many factors articulated throughout the remainder of the rule.... In all cases, the responsibility for determining whether the statutory definition of disability has been met is reserved to the [Commissioner].

*Rivera v. Secretary of Health & Human Services*, 986 F.2d 1407, No. 92–1896, 1993 WL 40850, at *3 (1st Cir. Feb.19, 1993) (table decision); *accord Shaw v. Secretary of Health and Human Services*, 25 F.3d 1037, No. 93–2173, 1994 WL 251000, at *3, (1st Cir. Jun. 9, 1994) ("[w]hen a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply.") (table decision).[14]

**11.** 20 C.F.R. § 404.1502 defines "treating source" to mean "your own physician or psychologist who has provided you with medical treatment or evaluation and who has or has had an ongoing treatment relationship with you.")

**12.** The additional medical records consisted of 1) an MRI report dated August 19, 1996 by Dr. Anthony P. Carter ("the MRI report"), 2) an x-ray report from Boston Medical Center dated October 4, 1993, ("the October 4, 1993 x-ray report") and 3) a "Physical Residual Functional Capacity Questionnaire" dated October 11, 1996, from Dr. Rich ("Dr. Rich's Questionnaire"). (Tr. 9–16.)

**13.** *See* 20 C.F.R. § 404.1527(f)(3) ("When the Appeals Council makes a decision, it shall follow the same rules for considering opinion evidence as administrative law judges follow").

**14.** The "treating physician rule" has been the subject of much debate and confusion among the circuits. *See, e.g.,* Schneider, Rachel, *A Role for*

In the instant case, Dr. Rich's opinion was not given "controlling weight" because the Administrative Law Judge found the final statement "conclusory," "not well-supported by medically acceptable clinical and laboratory techniques," and "inconsistent with the other substantial evidence on record." (Tr. 72.) An examination of the medical records from MCI–Cedar Junction and Dr. Venna's neurological report indicates that these sources do, in fact, differ from Dr. Rich's conclusion in their assessments of the severity of Guyton's back pain. Likewise, Dr. Rich's statements were not backed up by medical records. (Tr. 222, 288.) Thus, the decision not to give Dr. Rich's report "controlling weight" was supported by substantial evidence.

Moreover, the decision not to rely on Dr. Rich's report was also in accord with the factors listed in § 404.1527(d)(2)–(d)(6). The length of Dr. Rich's treatment relationship was not substantially different from that of the other physicians who saw Guyton—in fact, it was shorter than the five year relationship Guyton had with the doctors at MCI–Cedar Junction. The nature and extent of Dr. Rich's treatment relationship was not superior to that of the other physicians, nor was the medical supportability of his findings. The element of specialization is not relevant to Dr. Rich,[15] who—unlike Dr. Venna, a neurologist[16]—had no specialization that bore directly on Guyton's back injury. There were no other relevant factors for the Administrative Law Judge to consider.

It is important to note that regardless of what weight an Administrative Law Judge chooses to give a treating source's opinion, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." 20 C.F.R. § 416.1527(e)(1); *see also, Arroyo v. Secretary of Health and Human Services*, 932 F.2d 82, 89 (1st Cir.1991) ("The [Administrative Law Judge] was not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability.").

██ Finally, the Appeals Council is entitled to deference regarding its conclusion that the additional evidence provided by Guyton would not have affected the determination of the Administrative Law Judge. Nei-

---

the Courts: Treating Physical Evidence in Social Security Disability Determinations, 3 U.Chi.Law Sch. Roundtable 391 (1996) (discussing different standards articulated by the circuits and the effect of the Social Security Administration's 1991 regulations). Through the creation of new regulations in 1991, the Social Security Administration attempted to create a uniform standard concerning the scope of the treating physician rule. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed.Reg. 36,932, 36,935–37 (1991) (discussing the treating source regulation).

The First Circuit's articulation of the standard in *Rivera* and *Shaw* appears correctly to describe the analysis for determining what weight to assign to treating source's opinion in light of the 1991 changes. These opinions are also in accord with the treating physician standard as defined in the Second Circuit following its decade-long debate over the proper standard and the authority of the Social Security Administration. *See, e.g., Schaal v. Apfel*, 134 F.3d 496, 503–04 (2nd Cir.1998); *Schisler v. Sullivan*, 3 F.3d 563, 568–69 (2nd Cir.1993).

Despite the 1991 regulations, however, district courts in the First Circuit have, on occasion, misstated the correct standard for evaluating the conclusions of a treating physician. *See, e.g., Follensbee v. Secretary of Health and Human*

Services, CIV. 94–177–JD, 1995 WL 136935 at *6 (D.N.H. Mar. 28, 1995) (unreported decision) (reasoning that "[t]he First Circuit has made it clear that the Administrative Law Judge is [not] required to ... give greater weight to conclusions advanced by treating sources" based upon case law that pre-dates the 1991 regulations); *Weiler v. Shalala*, 922 F.Supp. 689, 698 (D.Mass. 1996) (stating that a treating physician's opinion will always be given greater weight "even if the treating source's opinion is inconsistent with other substantial evidence of record."). While the ultimate result in both of these cases appears to be correct, the courts' analysis of the treating physician standard was not.

**15.** Dr. Rich is a member of the General Internal Medicine Department at Boston City Hospital. (Tr. 222, 288.)

**16.** 20 C.F.R. § 404.1527(d)(5) specifically states that an Administrative Law Judge will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." *See also, Alvarado v. Weinberger*, 511 F.2d 1046, 1048 (1st Cir.1975) ("medical opinion of specialists may be entitled to greater weight than that of general practitioners").

ther the MRI report nor the October 4, 1993 x-ray report from Boston Medical Center reveal information about Guyton's back impairment that is different from the records upon which the Administrative Law Judge relied. (Tr. 9–11.) Although information in Dr. Rich's Questionnaire, (Tr. 12–16), does lend support to his assessment of Guyton's back impairment, the Appeals Council's conclusion that it would not alter the findings of the Administrative Law Judge was supported by substantial evidence in the original medical records, and is therefore controlling.[17] *See* 20 C.F.R. § 404.1527(f)(3) ("When the Appeals Council makes a decision, it will follow the same rules for considering opinion evidence as administrative law judges follow."); *see also, Irlanda Ortiz,* 955 F.2d at 769 ("Indeed, the resolution of conflicts in the evidence is for the Secretary, not for the courts.").

### B. *Claimant Failed to Prove a Continuous Childhood Disability*

Because substantial evidence supports the conclusion that Guyton has failed to prove that he was disabled prior to the age of 22 and then continuously until the filing of his claim for benefits, his claim for childhood disability benefits was properly denied. In reaching her conclusion, the Administrative Law Judge again relied upon Dr. Venna's discussion of the history of Guyton's pain. Although Guyton complained of "chronic lower lumbar spine pain since the age of fourteen years," (Tr. 208), Dr. Venna wrote that following approximately one year of back pain that occurred after the car accident, "[t]he symptoms, however, remitted completely for about five years and then re-

curred while he was in prison five years later." *Id.* This Court holds that Dr. Venna's report constitutes substantial evidence in support of the finding that "claimant does not meet the definition of a person disabled since childhood." (Tr. 74.) Thus, Guyton was ineligible for CDI benefits.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED IN PART AND REMANDED IN PART for the Administrative Law Judge to conduct a mental impairment assessment as required by the Social Security Act and to explain adequately her credibility determination regarding Guyton's subjective evidence of pain.

SO ORDERED.

---

**17.** Nor did the additional medical records that Guyton submitted to the Appeals Council warrant a remand to the Administrative Law Judge for reconsideration. Under 42 U.S.C. § 405(g), this court may "order additional evidence taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate the evidence into the record of the prior proceeding."

Guyton's additional medical records fail the "new evidence" test. The First Circuit has observed that "[t]he mere existence of evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for

remand." *Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 139 (1st Cir. 1987). Additional evidence is sufficiently "new" only when "such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Id.* Here, the additional medical records were essentially the same as the information already before the Administrative Law Judge, or merely represented a reinterpretation of information previously submitted. Consequently, the Appeals Council properly concluded that "the additional evidence [does not provide] a basis for changing the Administrative Law Judge's decision." (Tr. 3.)