Hannaford v. SSA                    CV-00-224-M    01/15/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Andre B. Hannaford,
     Claimant

     v.                                       Civil No. 00-224-M
                                              Opinion No. 2001 DNH 030
Kenneth S. Apfel, Commissioner,
Social Security Administration,
     Defendant


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Andre B. Hannaford, moves to reverse the Commissioner's decision denying his applications for Social Security Disability Insurance Benefits and Supplemental Security Income Payments under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 423, 1382 (the Act).  Defendant objects and moves for an order affirming the Commissioner.


**Factual Background**

I.   Procedural History

In the Fall of 1996, claimant filed applications for disability insurance benefits and for supplemental security

income payments under Titles II[1] and XVI of the Act, alleging that he had been unable to work since May 23, 1993, due to a back injury and a heart problem. The Social Security Administration denied his application initially and on reconsideration. On January 7, 1997, claimant and his attorney appeared before an Administrative Law Judge (ALJ) who considered the claims de novo. The ALJ issued his order on March 25, 1998, concluding that, although subject to some restrictions, claimant was capable of light work and making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ found that claimant was not disabled, within the meaning of the Act, at any time through his decision.

Claimant then sought review of the ALJ's decision by the Appeals Council. On March 15, 2000, the Appeals Council denied claimant's request thereby making the ALJ's decision final, subject to judicial review. On May 8, 2000, claimant filed a timely action in this court asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial

---

[1]Claimant last met the disability insurance requirement on December 31, 1996.

2

determination that he is entitled to benefits. Claimant then filed a "Motion for Order Reversing Decision of the Secretary" (document no. 7), referencing his earlier filed "Memorandum of Law in Support of Plaintiff's Request for Qualification of Benefits under Disability Insurance and Supplemental Security Income" (document no. 6). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 8). Those motions are pending.

## II. Stipulated Fact

Pursuant to this court's Local Rule 9.1(d), the parties have filed a detailed statement of stipulated facts which, because it is part of the record (document no. 9), need not be recounted in this opinion.

### Standard of Review

## III. Properly Supported Findings by the ALJ are Entitled to Deference

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

3

Secretary [now, the Commissioner], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1382(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[2] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the claimant's position. See Gwathey v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must uphold the ALJ's decision where the evidence is susceptible to

---

[2] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).

4

more than one rational interpretation."); <u>Tsarelka v. Secretary of Health and Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. <u>See</u> <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769. Accordingly, the court must give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. <u>See</u> <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

IV.  The Parties' Respective Burdens

A person seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a severe impairment;

(3)   whether the impairment meets or equals a listed impairment;

(4)   whether the impairment prevents the claimant from performing past relevant work; and

(5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  See also 20 C.F.R. § 416.902.  Ultimately, a claimant is disabled only if his:

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm the decision.

8

**Discussion**

I.  Background - The ALJ's Findings

In concluding that Mr. Hannaford was not disabled within the meaning of the Act, the ALJ employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since May 23, 1993.  Transcript at 18.  Next, he concluded that claimant suffers from severe impairments: "The evidence supports a finding that Mr. Hannaford has atrial fibrillation and degenerative disc disease of the lumbar spine, impairments which cause significant vocationally relevant limitations."  Id. at 19.  At step three of the sequential analysis, the ALJ concluded that claimant's impairments did not meet or equal a listed impairment.  Id.

The ALJ next determined that claimant's residual functional capacity (RFC) allows him to perform less than a full range of light work.  Accordingly, he concluded that claimant's impairments prevent him from performing his past relevant work as an auto body mechanic.  Transcript at 28.  Finally, while noting that strict application of the Medical-Vocational Guidelines of

9

Appendix 2 of the regulations (also known as the "Grid") was not possible due to "non-exertional limitations which narrow the range of work he is capable of performing," the ALJ nonetheless concluded that there are jobs, existing in significant numbers in the national economy, which the claimant is able to perform. Id. at 29. Consequently, he concluded that claimant is not disabled within the meaning of the Act.

II. Claimant's Allegations of Error

In this appeal, claimant challenges many aspects of the ALJ's decision. He asserts that the ALJ did not adequately address his allegations of pain; erred in evaluating medical opinions, particularly the opinion of Dr. Nagel, one of claimant's treating physician; failed to consider the combined effects of multiple impairments; and improperly concluded that there are jobs in the national economy that claimant can perform.

A. Claimant's Allegations of Pain

It is the province of the ALJ to determine a claimant's credibility. Accordingly, if properly supported, the ALJ's

10

credibility determination is entitled to substantial deference from the court. See, e.g., Irlanda Ortiz, 955 F.2d 765, 769 (1st Cir. 1991) ("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." (internal citations omitted)).

Once it is determined, as it was here, that a claimant has an impairment (or impairments) that are capable of causing pain, the ALJ must "evaluate the intensity, persistence, and limiting effects of the [pain] to determine the extent to which the [pain] limit[s] the individual's ability to do basic work activities." Social Security Ruling (SSR) 96-7p (July 2, 1996). If the alleged intensity, persistence, and limiting effect of the pain are not supported by the objective medical evidence, the ALJ must look beyond the objective medical evidence and consider the following factors:

(1)   the claimant's daily activities;

(2)   the location, duration, frequency, and intensity of the claimant's pain;

(3)   factors that precipitate and aggravate the pain;

11

(4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain;

(5) treatment, other than medication, the claimant receives or has received for relief of pain;

(6) any measures other than treatment the claimant uses or has used to relieve pain; and

(7) any other factors concerning the claimant's functional limitations and restrictions due to pain.

20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 96-7p; Avery v. Secretary of Health and Human Services, 797 F.2d 19, 28 (1st Cir. 1986). Additionally, "the lack of consistency between an individual's statements and other statements that he or she made at other times does not necessarily mean that the individual's statements are not credible." SSR 96-7p. The ALJ should review the record for any explanations regarding variations in a claimant's statements about pain. Id.

Here, the ALJ found "claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible." Transcript at 26. Although he noted the requirement to address all the above factors, it is not clear from the record that he went beyond consideration of the

12

objective medical evidence and pointing out inconsistencies in claimant's statements about his activities. And, on at least one occasion, the ALJ appears to have misread the record when he identified a treatment note as "indicat[ing] the claimant's current work in auto body" when the note actually indicates that claimant had been out of work "since Sept. due to heart." Compare Transcript at 26 (citing Exhibit 24F-20) with Transcript at 367 (Exhibit 24F-20) (handwritten notations: "works auto body (OOW)" and "OOW since Sept. due to heart"). The medical note actually seems consistent with claimant's testimony that, although he did try to start his own auto body service so that he could pace himself, he had to give it up because "it just took too long to get anything done and it caused problems . . . as far as [his] health," see Transcript at 413 - an explanation that may have been overlooked.

The ALJ also identified two occasions on which claimant drove a car, and seems to have found it particularly significant that claimant was "obviously able to drive". See Transcript at 26. While the ALJ found this fact inconsistent with claimant's testimony that he "spends most of his day lying down," id., the

13

ALJ made no finding as to how often claimant drives, for how long he can drive at a time, or what physical consequences might follow his driving activity. See Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (per curiam). On this record, it is difficult to find the assessment of claimant's credibility to be adequately supported. It is not sufficiently clear that the requisite factors were adequately considered, and the referenced objective indicia of the absence of a disabling pain are not, standing alone, dispositive.

B.   Evaluation of Medical Opinions in Determining RFC

Like other credibility issues, the ALJ has significant discretion with respect to the weight given medical opinions. However, under the regulations, a treating physician's medical opinion will generally be given controlling weight unless the ALJ finds that the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and concludes that it is not supported by substantial evidence in the record, in which case the opinion may be afforded less or no weight. 20 C.F.R. §§ 404.1527(d), 416.927(d). When a treating

14

physician's opinion is not given controlling weight, the ALJ must determine what weight, if any, to afford it after considering the following factors:

(1) Length of the treatment relationship and the frequency of evaluation;

(2) Nature and extent of the treatment relationship;

(3) Relevant evidence provided to support the opinion;

(4) Consistency;

(5) Specialization; and

(6) Any other factors claimant or others bring to the ALJ's attention, or of which the ALJ is aware, which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(d)(2)(i)-(d)(6), 416.927 (d)(2)(i)-(d)(6). See also Guyton v. Apfel, 20 F.Supp.2d 156, 167 (D. Mass. 1998).

Here, the ALJ found Dr. Nagel's evaluation of "claimant's ability to perform work related activities sitting, standing and walking . . . not persuasive and binding." Transcript at 27. However, the record does not adequately support that finding.

The ALJ describes the objective medical evidence as supporting a diagnosis of degenerative disc disease, but revealing that claimant exhibits normal heel-to-toe walking,

15

strength and motor function, as well as sitting, standing, and walking. See Transcript at 27. He also notes that claimant had a normal neurological exam and negative straight leg rising. See id.

The "Medical Assessment of Ability to do Work-Related Activities (Physical)" form completed by Dr. Nagel on November 26, 1997, reveals his opinion that claimant's ability to lift is limited to five pounds frequently, and ten pounds occasionally; and claimant's ability to sit and stand is limited to two to three hours, and an hour and a half hour without interruption, respectively.[3] Transcript at 275-76. The ALJ summarizes the opinion as recommending vocational rehabilitation and finding claimant limited in his ability to lift, carry, sit, stand, and walk. See id. at 27. In assessing this opinion, the ALJ "note[d] that the opinion of a treating physician need not be assigned weight if it is not supported by objective medical evidence or clinical findings." Id. He then went on to state

_____

[3]Dr. Nagel's assessment also includes his opinion related to other limitations that the ALJ seems to have at least partly accepted. See Transcript at 277-79; see also Transcript at 30 (Findings).

16

> There are no objective medical findings that support limitations on the claimant's ability to sit, stand and walk. In fact, information contained in medical reports documenting work activity, and his ability to drive have all supported his ability to sit, stand and walk. Therefore I find that Dr. Nagel's opinion with regard to the claimant's ability to perform work related activities sitting, standing and walking is not persuasive and binding. The objective medical evidence has supported that the claimant has an ability to perform light work activities.

Transcript at 27.[4]

Although the lack of objective medical evidence may result in a decision not to assign controlling weight to a treating physician's medical opinion, a decision to assign no weight to the opinion must follow consideration of the additional referenced factors. See 20 C.F.R. §§ 404.1527(d)(2)(i)-(d)(6), 416.927 (d)(2)(i)-(d)(6). See also Guyton v. Apfel, 20 F. Supp.2d at 167. The ALJ's decision in this case does not reflect consideration of those additional factors. For example, it does not discuss the fact that Dr. Nagel, a physician specializing in orthopaedics, regularly treated claimant for his back problems since 1994 and noted increases in pain during that time. Nor

---

[4]The findings related to claimant's apparent ability to work and drive were dealt with above and are similarly lacking support in this context.

17

does it address the fact that he consistently found claimant to have trouble sitting and standing for prolonged periods of time. See Transcript at 203, 206, 211, 212, 219, 275-76. It may be that the ALJ did consider all relevant factors before assigning no weight to Dr. Nagel's opinion, but the record is not helpful in determining whether he did or did not. While the objective medical evidence of record, in isolation, might undermine Dr. Nagel's opinion, and application of the relevant factors may not alter the weight the ALJ assigns to that opinion, this record does not adequately support the decision to completely disregard Dr. Nagel's assessment of claimant's ability to sit, stand, and walk.

C.   Multiple Impairments

When assessing a claimant's RFC, the ALJ must evaluate the severity of individual impairments. However, if multiple impairments are adequately identified, the combined effect must also be assessed. 20 C.F.R. §§ 404.1523, 416.923. Here, the ALJ clearly found that claimant suffers from "atrial fibrillation and degenerative disc disease of the lumbar spine, impairments which

18

are severe. . . ." Transcript at 30. He also individually assessed the severity and impact of each impairment. However, there is no indication in the record that he considered the combined effects of claimant's impairments.[5] Accordingly, the ALJ's assessment of the severity of claimant's multiple impairments is not supported by substantial evidence.

D.    Determination that Jobs Claimant Can Perform Exist in the National Economy

Finally, claimant argues that there are no jobs in the national economy that he can perform, and that the ALJ failed to consider the severity of his pain at step five of the sequential analysis. Actually, claimant seems to be arguing that the ALJ inappropriately relied on the Grid and did not account for claimant's non-exertional limitations.

At step five, the burden is on the Commissioner to show that jobs that claimant can perform within his limitations exist in

_____

[5]For example, Dr. Nagel noted that an epidural helped claimant with radiating pain but that due to claimant's heart treatment, he (Dr. Nagel) was "reluctant" to repeat the epidural. Transcript at 389. Similarly, Dr. Nagel observed that claimant's endurance is hindered by his heart problems. Id. at 279.

19

the national economy.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If claimant were only limited in strength requirements, the ALJ could rely exclusively on the Grid.  See Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  However, when other limitations (known as "non-exertional limitations") exist, such as an inability to bend repeatedly or to work in extreme temperatures, the ALJ must rely on more than just the Grid, unless the ALJ finds that the additional limitations only marginally erode the relevant occupational base.  See id. at 996 (citing Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 524 (1st Cir. 1989)).  The most common source to turn to is a vocational expert.  Id.

Here, the ALJ found that "claimant's capacity for the full range of light work is diminished by his inability to bend repeatedly or work in extreme temperature."  Transcript at 30.  He also acknowledged that "[s]trict application of [the Grid] is not possible" due to these non-exertional limitations.  Id. at 29.  However, without indicating any other source or identifying specific jobs, without consulting a vocational expert, and without finding that the non-exertional limitations only

20

marginally reduce claimant's occupational base, the ALJ concluded that claimant "retains the capacity to make an adjustment to work which exists in significant numbers in the national economy." Id.  Based on that conclusion, the ALJ denied claimant's request for benefits.  Because the ALJ did not disclose the basis for his conclusion, it cannot be sustained.  See, e.g., Ortiz, 890 F.2d at 525 n.4 ("[W]henever an ALJ fails to take vocational testimony, he must be deemed in reality to have relied exclusively on the grid to show the existence of jobs claimant could perform." (internal quotation marks and citations omitted)).


## Conclusion

For the foregoing reasons, the court finds that the ALJ's decision denying claimant benefits is not supported by substantial evidence in the record.  Accordingly, claimant's motion to reverse the decision of the Commissioner (document no. 7) is granted.  The Commissioner's motion to affirm the decision (document no. 8) is denied.  Pursuant to sentence four of 42

U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 15, 2001

cc:   James W. Craig, Esq.
      T. David Plourde, Esq.