Everett LOPES, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.

No. CIV.A. 03–12549–WGY.

United States District Court,
D. Massachusetts.

June 3, 2005.

Morris Greenberg, Green & Greenberg, Providence, RI, for Everett R. Lopes, Plaintiff.

Christopher R. Donato, United States Attorney's Office, Jeremy M. Sternberg, United States Attorney's Office, Boston, MA, for Jo Anne B. Barnhart, Defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

This action is brought under sections 205(g) and 1631(c)(3) of the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3). The plaintiff, Everett Lopes ("Lopes"), seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits and Supplemental Security Income payments. Lopes argues the hearing officer's decision was not supported by substantial evidence because it failed to follow the appropriate procedures for the evaluation of pain and credibility and failed to give appropriate weight to the treating source opinions. Pl.'s Mot. for Summ. J. or Alternatively for Remand [Doc. No. 12]; Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") [Doc. No. 13]. Lopes requests this Court reverse the Commissioner's decision with an order for calculation of benefits, or, alternatively, remand the case for proper evaluation of the evidence. The Commissioner filed a motion to affirm the Commissioner's decision. Def.'s Mot. for Order Affirming Decision of the Commissioner [Doc. No. 14]; Def's Mem. of Law in Supp. of Mot. for Order Affirming Decision of the Commissioner ("Def.'s Mem.") [Doc. No. 15].

## II. BACKGROUND

### A. Procedural History

On September 18, 2001, Lopes filed for Disability Insurance Benefits and Supple-

mental Security Income payments. R. at 81–83. The Commissioner denied Lopes' application claim on November 21, 2001. *Id.* at 56–60. Lopes' request for reconsideration, R. at 61, was denied on January 31, 2002, *id.* at 62–65, and his request for a hearing was granted and heard on January 22, 2003. *Id.* at 25–52. The hearing officer denied Lopes' claim on June 19, 2003 after a review of the evidence and hearing testimony because: 1) Lopes' assertion of incapacity was inconsistent with the whole record, 2) Lopes is not disabled under the regulations, and 3) Lopes could perform a significant number of jobs in the national economy (including "hand packer, production inspector and assembler in a variety of industries"). *Id.* at 14–24. Lopes made a timely request for review by the Appeals Council which was denied on October 1, 2003. *Id.* at 8–9. Therefore, the hearing officer's decision became the final decision of the Commissioner. Lopes filed an action in this Court on December 31, 2003 to review the decision of the Commissioner pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pl.'s Compl. at 1. [Doc. No. 3].

## B. Factual Background

Lopes was born on February 11, 1965. R. at 279. He completed high school and one year of college. *Id.* at 107. His previous employment included a boatyard laborer, computer board inspector, telemarketer, cook, warehouse laborer, and (paid) volunteer firefighter. *Id.* at 102, 114.

Lopes applied for disability benefits claiming an inability to sleep, fatigue and pain from lyme disease, heart palpitations, and back problems. *Id.* at 101; Pl.'s Mem. at 2. Lopes also complained of difficulty being around people and having "no desire to do anything." R. at 127–128; Pl.'s Mem. at 2.

On January 8, 2002 Lopes completed the Commissioner's Questionnaire on Pain and Activities of Daily Living stating he lives with his parents and does not cook, do any housework or chores, nor his own shopping. *Id.* at 122–128. Lopes is transported by family if travel is necessary. *Id.* He claimed he was in constant pain in his entire body and the pain medication affects his stomach. *Id.* at 123–124.

### 1. Medical Evidence

### a. Southcoast Hospital Groups (Tobey Hospital, Inc. and St. Luke's Hospital)

Lopes visited the Southcoast Hospital Groups in January, March, April, and June of 2001 with complaints of fatigue and heart palpitations. R. at 131–187; Pl.'s Mem. at 4. Lopes had a Holter study[1] in March and June of 2001. Although the March Holter Study reported thirty four minutes and eight seconds of tachycardia,[2] four minutes and fourteen seconds of bradycardia,[3] and nineteen late beats, Dr. Bruce Brown reported the March echocardiogram study was normal. R. at 178; Pl's Mem. at 4. The discharge instruction

---

1. A Holter study or echocardiogram is the continuous monitoring of the electrical activity of a patient's heart muscle for twenty-four hours. Electrocardiography is "a method of recording electrical currents traveling the heart muscle." Stedman's Medical Dictionary 573 (27th ed.2000).

2. Tachycardia is "a [r]apid beating of the heart, conventionally applied to rates over 90 [beats per minute]." Stedman's Medical Dictionary at 1782. "Tachycardia may be trig-

gered by conditions such as heart disease, an overactive thyroid gland, fever, or by drinking alcohol or caffeinated beverages." Univ. of Michigan Health Sys. Health Topics, Tachycardia, *at* www.med.umich.edu/ llibr/ heart/rate08. htm (last visited May 19, 2005).

3. Bradycardia is a "[s]lowness of the heartbeat usually defined ... as a rate under 50 [beats per minute]." Stedman's Medical Dictionary at 232.

sheet recommended using a heating pad, taking Vicodin as needed for pain, ceasing alcohol use, and abstaining from lifting or any physical activity, as well as a follow-up appointment and returning to the hospital if symptoms worsen. R. at 155.

Dr. Jagdish R. Shah concluded the examination was normal on April 12, 2001. *Id.* at 152. He noted the "the aerated lungs are clear. The heart is normal in size. The hilar and medistinal structures are within normal limits. No bony abnormalities are appreciated." *Id.* The discharge instruction sheet from this exam notes a diagnosis of muscular pain and acute alcohol intoxication with instructions "to stop drinking alcohol [as it] can cause heart palpitations [and] many other problems." *Id.* at 143. Additionally, heat application was recommended, as was Naprosin for pain (which is not to be taken during alcohol consumption). *Id.*

Dr. Daniel Le reported that the June 13, 2001 visit showed there "is no evidence of acute cardiopulmonary disease." *Id.* at 140. Dr. Brown opined that the June Holter study was normal. *Id.* at 131; Pl.'s Mem. at 4. Additionally, the discharge instruction sheet contained four instructions which reiterated: "1) Take your Naprosin *instead* of alcohol for pain, 2)[s]top abusing alcohol, 3)[f]ollow up with Dr. Brown tomorrow, and 4)[r]eturn for further problems." R. at 146.

### b. Falmouth Free Clinic

In September and October of 2001, Lopes was seen by nurse practitioner Maureen T. McKay, R.N., C.S., A.N.P., at the Falmouth Free Clinic. *Id.* at 188–197. During the September 6th and 19th visits, Lopes complained of an upset stomach from tetracycline and back pain, while Ms. McKay found that Lopes' chest was tender to the touch and was experiencing rhonchi, crackling and wheezing. *Id.* at 189, 193; Def.'s Mem. at 3. Ms. McKay prescribed Toprol with discharge instructions for Lopes to decrease his cigarette smoking and stop his caffeine intake. R. at 193; Def.'s Mem. at 3. During the October 2, 2001 visit, Lopes complained that he "continues to feel achy and sore," but "palpitations have become less prevalent" and he is "sleeping better." R. at 188; Pl.'s Mem. at 4. The nurse's diagnosis was chronic lyme disease and she prescribed Vioxx.[4] R. at 188.

### c. Massachusetts Department of Transitional Assistance Evaluations

Ms. McKay completed an evaluation on January 8, 2002 diagnosing Lopes with chronic lyme disease and stating that he was on tetracycline. *Id.* at 222–223. Ms. McKay was unable to assess the functional capacity of Lopes including any physical or mental activities. *Id.* at 223–224. Ms. McKay also completed a Residual Functional Capacity Questionnaire and opined that the chronic lyme disease creates a marked limitation to deal with work stress and would likely cause Lopes to be absent from work more than three times a month. *Id.* at 225–228; Def.'s Mem. at 4.

Dr. Lisa Zandonella–Huhta completed an evaluation on January 20, 2002 diagnosing Lopes with chronic lyme disease, palpitations, and depression. R. at 229–235. The record concluded Lopes' mental activities were considerably limited as to all activities listed on the form. *Id.* at 235; Pl.'s Mem. at 5. In addition, Lopes could

---

4. "Vioxx is a nonsteroidal anti-inflammatory drug (NSAID) that exhibits anti-inflammatory, analgesic, and antipyretic activities in animal models." Physician's Desk Reference for Pre-scription Drugs (Micromedex, Inc.2005). Vioxx has been shown to reduce joint pain and is used for rheumatoid arthritis, pain reliever, and migraine headaches. *Id.*

walk about five hundred feet, stand and sit for two hours each, and occasionally bend and lift twenty pounds. R. at 233.

#### d. Donta Infectious Diseases

Ms. McKay saw Lopes on June 1, 2002 at Donta Infectious Diseases and noted that Lopes was "alert and oriented," and "in no acute distress." R. at 236. Ms. McKay instructed Lopes to take Clarithromycin and Hydroxychloroquine[5] for the Lyme Disease and refrain from alcohol use. *Id.* at 236.

#### e. Raymond E.H. Partridge, M.D., F.R.C.P.

Dr. Partridge saw Lopes on referral from Dr. Zandonella–Huhta on June 3, 2002. *Id.* at 252. Dr. Partridge opined that Lopes' past history included a "weakly positive IgM Lyme titer" and upon examination found moderate muscle tenderness in his forearm extensors, shoulder girdle, knees, and hips which was "suggestive of fibromyalgia"[6] and recommended treatment at a rehabilitation program. *Id.*

#### f. Duffy Health Center

Lopes was seen by Dr. Zandonella–Huhta on July 16, September 1, and October 7, 2002. *Id.* at 238–251. During the visits, Lopes complained of short term memory loss, weight loss, fatigue, night sweats, joint pain, and headaches. *Id.* at 239, 245, 250; Pl.'s Mem. at 5. Dr. Zandonella–Huhta opined that the MRI ordered to investigate Lopes' headaches appeared normal. R. at 241. Additionally, she observed that Lopes was in no acute distress and was "sitting comfortably." *Id.* at 240; Def.'s Mem. at 6. Dr. Zandonella–Huhta referred Lopes to Saint Anne's Hospital Pain Management Center. R. at 275.

#### g. Saint Anne's Hospital Pain Management Center

Dr. Christopher Stowe saw Lopes on December 20, 2002 and found he would not benefit from interventional pain procedures. R. at 275. As such, he declined to accept Lopes as a patient. *Id.* Dr. Stowe's examination concluded that Lopes was alert and oriented, with normal heart

---

**5.** Clarithromycin is "effective against a wide spectrum of ... bacteria, used in the treatment of respiratory tract infections and skin and soft tissue infections." Dorland's Illustrated Medical Dictionary 372 (30th ed.2003); Def.'s Mem. at 5. Hydroxychloroquine is used as a lysosomotropic agent to assist the Clarithromycin. R. at 236.

**6.** Fibromyalgia is "pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points." Dorland's Illustrated Medical Dictionary at 697. It is described as

> a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are pain all over, fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely [eighteen] fixed locations on the body (and the rule of thumb is that the patient must have at least [eleven] of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not.

*Sarchet v. Chater*, 78 F.3d 305, 306–307 (7th Cir.1996) (internal citations omitted).

sounds, a full range of motion of the neck with pain titling side to side, and some "generalized myofascial tenderness with multiple tender fibromyalgia points." *Id.* at 276.

### h. Disability Determination Services

Disability Determination Services referred Lopes to Dr. Joel Olubodun for an evaluation of his physical complaints on November 3, 2001. *Id.* at 198–200; Def.'s Mem. at 6. Dr. Olubodun noted that Lopes was in no distress, his lung fields were clear, and there was limitation in the use of his left upper extremity. R. at 198–199.

Dr. Mark Colb's assessment of the records on November 16, 2001 noted the following exertional limitations: Lopes could occasionally lift and carry fifty pounds, frequently lift twenty five pounds, and stand and walk about six hours in an eight hour workday. *Id.* at 201–209. The manipulative limitations noted were that Lopes could perform no reaching above ninety degrees. *Id.* at 204.

Dr. Mary Connelly's assessment of the record on January 29, 2002 noted findings generally consistent with the previous report, except for a decrease in Lopes' ability occasionally to lift and carry to 20 pounds and frequently lift and carry to 10 pounds. *Id.* at 211.

### i. Lopes' Hearing Testimony

The hearing officer questioned Lopes on January 22, 2003 about his inability to work and Lopes responded that he is on several medications which make him drowsy, he has pains throughout his body, and his legs swell if he is on his feet for any period of time. *Id.* at 34–35. Lopes speci-

fied that the joint pain occurred in his elbows, hands, knees, ankles, back, neck, and head. *Id.* at 36. Lopes lives alone in an apartment and is responsible for all of the chores, including the medium weight chores of laundry and taking out the trash. *Id.* at 39. Additionally, Lopes does his own food shopping, cooks, takes the city buses or his apartment bus to do his shopping. *Id.* at 40. Lopes feels that his being tired and the pain he experiences would prevent him from doing any type of work. *Id.* at 39.

### j. Vocational Expert Testimony

Mr. Michael Laraia, the vocational expert, questioned Lopes about responsibilities in several of his previous jobs. *Id.* at 41–44. Mr. Laraia then classified the skill and exertion levels of Lopes' past work.[7] *Id.* at 44. He then identified other jobs in the regional or national economy that could be performed by a hypothetical claimant confined to light exertion with a moderate reduction in ability to maintain attention and concentration (eight hours per day with short work breaks every two hours). *Id.* at 45. The identified jobs included hand packager, assembler, or production inspector. *Id.* at 44. The vocational expert concluded that Lopes could perform these jobs even with the limited use of his non-dominant left upper extremity. *Id.* at 47.

## III. DISCUSSION

### A. Standard of Review

██ The Social Security Act limits judicial review of a Social Security disability benefit determination. This Court's re-

---

7. Lopes' previous employment classifications included: warehouse laborer (medium and unskilled), telemarketer (sedentary and semi-skilled), computer board circuit board inspector (light and semi-skilled), boatyard laborer (heavy and unskilled), cook (medium and skilled), meter installation repair (semi-skilled and light), and fire fighter (very heavy skilled). R. at 44.

view of the Commissioner's decision is limited by section 405(g) of the Social Security Act, which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Manso–Pizarro v. Secretary of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420 (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). This Court must therefore affirm the Commissioner's decision "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987) (citation omitted). The Court's function, therefore, is limited to deciding "whether there is substantial evidence to support the Secretary's findings and whether the decision conformed to statutory requirements." *Geoffroy v. Secretary of Health and Human Servs.*, 663 F.2d 315, 319 (1st Cir. 1981) (citations omitted).

**B. Disability Determination Process**

Claimants must show that they are "disabled" as defined in the Social Security Act in order to receive benefits. 42 U.S.C. §§ 423(a)(1)(E), 423(d). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Social Security Administration's regulations require a five-step sequential evaluation for determining whether a claimant is disabled. The hearing officer must determine:

1. whether the claimant is engaged in substantial gainful activity;

2. whether the claimant has a severe impairment;

3. whether the impairment meets or equals a listed impairment;

4. whether the impairment prevents the claimant from performing past relevant work; and

5. whether the impairment prevents the claimant from doing any other work when considering claimant's age, education and work experience.

20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). If at any step during the application of the test the claimant is found not to be disabled the inquiry ends. While the claimant bears the burden of proving the first four steps, the hearing officer bears the burden of proving the fifth step. *See Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

**C. Lopes' Challenge to the Hearing Officer's Determination of Pain and Credibility**

Lopes argues that the hearing officer's decision is not supported by substantial evidence because the hearing officer failed to follow the proper procedures as set

forth in *Avery v. Secretary of Health and Human Servs.*, 797 F.2d 19, 27–30 (1st Cir.1986), when evaluating Lopes' pain and credibility. Pl.'s Mem. at 10. Lopes asserts that the hearing officer failed to ask sufficient questions in order to "draw conclusions about the plaintiff's activities and credibility." *Id.* Furthermore, Lopes contends that the hearing officer was required to explain his reasoning and that the hearing officer's "general, vague statement"[8] does not satisfy this standard. *Id.*

■ Under *Avery*, 797 F.2d at 29, the court must consider the claimant's subjective assertion of pain by examining the following six factors:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
4. Treatment, other than medication, for relief of pain;
5. Functional restrictions; and
6. The claimant's daily activities.

The First Circuit has held that a hearing officer's credibility determination, "is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987).

■ Lopes argues that the hearing officer "failed to elicit the necessary testimony and therefore had insufficient information from which to draw conclusions about the plaintiff's activities and credibility" because the hearing officer only considered the plaintiff's functional restrictions, daily

activities and medications. Pl.'s Mem. at 11. A searching review of the hearing testimony, however, reveals that the hearing officer covered—despite the cursory conclusion—all of the *Avery* factors.

Specifically, Lopes first testified he had "pains throughout [his] body" and stated "if I'm on my feet for a long time or for a short period, they ... bother me. My legs they swell. Just a lot of joint pain." R. at 35. This addresses the first *Avery* factor by describing the nature, location, onset, frequency, and intensity of the pain. Lopes was further questioned about the location of his joint pain and responded that he experienced pain in his elbows, hands, knees, ankles, back, neck and head. *Id.* at 36. The precipitating and aggravating factors are discussed when Lopes stated he could stand for ten minutes before having to sit again, but could only sit for two hours before he is agitated. *Id.* at 41. In regards to the fourth *Avery* factor, Lopes testified that he does not participate in any exercise or therapy program which addresses whether there is any treatment for relief of pain other than medication. *Id.* at 39. This Court has previously ruled there existed no grounds for reversal when the hearing officer omitted one factor, but adequately attended to the other relevant factors. *Lacroix v. Barnhart*, 352 F.Supp.2d 100, 115 (D.Mass.2005) ("By and large, the hearing officer gave adequate attention to all of the relevant *Avery* factors."). Likewise, in this case, there are no grounds for reversal because the hearing officer adequately, albeit barely, attended to all of the *Avery* factors.

■ Next, Lopes claims that the hearing officer is required to explain his reasoning in determining Lopes' credibility.

8. The hearing officer's finding states only "[t]he degree of incapacity asserted by the claimant as resulting from his impairments is not consistent with the record as a whole." R. at 23.

Pl.'s Mem. at 11; *see Guyton v. Apfel,* 20 F.Supp.2d 156 (D.Mass.1998) (ruling that though *Avery* was properly applied, the decision inadequately explained the determination of credibility). Lopes asserts that his subjective statements regarding pain should have been addressed because the medical evidence establishes that Lopes suffers from "severe impairments, fibromyalgia, and chronic lyme disease." Pl.'s Mem. at 10.

In *Guyton,* this Court was concerned with the hearing officer's general statement because there must be "specific findings as to the relevant evidence [she] considered in determining to disbelieve the appellant." *Guyton* 20 F.Supp.2d at 167 (citing *DaRosa v. Secretary of Health and Human Servs.,* 803 F.2d 24, 26 (1st Cir. 1986)). The First Circuit has upheld a hearing officer's determination where the findings are supported by examining the entire record, even though more express findings would have been preferable. *Frustaglia,* 829 F.2d at 195.

In this case, the hearing officer compared Lopes' subjective complaints with the objective medical diagnosis and records. R. at 22. The hearing officer reviewed Dr. Partridge's recommendation to attend a rehabilitation program, the notes from the Pain Clinic that Lopes would not benefit from their treatment, and the hearing testimony that Lopes does not attend any exercise or therapy programs. In addition, the record as a whole shows an improvement in Lopes' activity level over a one year period. On January 8, 2002, Lopes' Questionnaire on Pain and Activities of Daily Living stated that Lopes lived with his parents and did not cook, do any housework, chores, nor his own shopping; yet, just over a year later, on January 23, 2003, Lopes' hearing testimony revealed he now lived alone in an apartment, is responsible for all of the chores, including laundry, taking out the trash, and grocery shopping by taking public transportation. Moreover, the hearing officer noted that Lopes' testimony of pain in the legs was contradicted by the lack of any prior mention of such a symptom. The hearing officer, therefore, provided sufficient evidence on which to base his credibility determination and the analysis of the *Avery* factors. In conclusion, the hearing officer's opinion must here be given deference as it is supported by substantial evidence upon a thorough review of the entire record as a whole.

### D. Lopes Challenges the Weight Applied to the Treating Source Opinions

Lopez contends the hearing officer's residual functional capacity decision [9] is not based on substantial evidence because it is inconsistent with Lopes' testimony and treatment records. Pl.'s Mem. at 13. Therefore, Lopes contends that the hearing officer relied solely on the findings of the non-examining physicians and did not give controlling weight to the examining physicians. *Id.*

Lopez correctly states that the degree of weight to be afforded a treating physician's opinion is guided by Social Security Ruling No. 96–2p and 20 C.F.R. § 404.1527(d)(2). *Id.* at 12. Accordingly, the treating physician's opinion is generally afforded controlling weight if it "is well-supported by medically acceptable clinical

---

9. The hearing officer found Lopes' residual functional capacity allows "light work that could accommodate limited use of the non-dominant left upper extremity encompassing no work above shoulder level or lifting of over [ten] pounds, and with a moderate restriction on the ability to maintain attention and concentration (related to pain)." R. at 22 (footnote and citation omitted); Pl.'s Mem. at 13.

and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2004). Furthermore, the hearing officer is instructed to give "good reasons" for the amount of weight afforded the treating physician's opinion. *Id.* In all cases, the Commissioner is responsible for determining whether the statutory definition of disability has been met. 20 C.F.R. § 404.1527(e).

■ First, Lopes contends that the hearing officer's decision was not based on Lopes' hearing testimony. Pl.'s Mem. at 13. The hearing officer, however, reasonably found Lopes' statements not fully credible. R. at 23. The residual functional capacity reflected the hearing officer's determination as drawn from his assessment of the record.

■ Next, Lopes argues that the hearing officer's determination was not based on the treatment records but solely on the opinions of the non-examining physicians. Pl.'s Mem. at 13–14. Lopes claims that more weight should be given to Dr. Zandonella–Huhta's opinion which states that Lopes is limited to performing less than sedentary work. *Id.*

The treatment records from Lopes' three visits to Dr. Zandonella–Huhta contain evidence that somewhat contradicts her ultimate "less than sedentary" finding as to residual functioning capacity. R. 229–251; Pl.'s Mem. at 13; Def.'s Mem. at 15. For example, the July visit notes that Lopes "has no new complaints and feels he is doing well ... he can sleep some nights without taking Elavil," and the doctor made an objective observation that Lopes was "sitting comfortably." R. at 238, 240. Again, during the October visit the record states that while Lopes "continues to [complain of] pain in his knees, elbows, back and headache," *Id.* at 250, he is "doing very well ... still pains at times but not

like in the past." *Id.* at 246. Although Lopes claims Dr. Zandonella–Huhta's opinion ought be given greater weight even though the medical notes in the record are incomplete, the Social Security Ruling instructs a hearing officer to weigh the treating physician's opinion by evaluating it against her own medical notes and other evidence in the record. 20 C.F.R. § 404.1527(d)(2), S.S.R. 96–2p.

Additionally, Dr. Zandonella–Huhta's opinion contradicts other treatment records. For instance, Ms. McKay, on June 1, 2002, found Lopes in "no acute distress," "alert and oriented," and "more confident and relaxed." R. at 236. Dr. Partridge, on June 3, 2002, noted that Lopes had good range of motion in all his joints, mild muscle tenderness, which was suggestive of fibromyalgia, and no evidence of active Lyme disease. *Id.* at 252. Since Dr. Zandonella–Huhta's opinion was not consistent with the doctor's objective findings or the record as a whole, the hearing officer did not err in according greater weight to Dr. Partridge's opinion.

Lopes claims that Dr. Partridge's reports do not support a finding of ability to work at the light exertion level, but rather support a finding that Lopes had severe pain. Pl.'s Mem. at 14. Not so. Dr. Partridge's treatment records provide findings consistent with the hearing officer's determination of residual functioning capacity. The doctor's records indicate Lopes had a good range of motion in all his joints, mild muscle tenderness, which was suggestive of fibromyalgia, and no evidence of active Lyme disease. *Id.* at 252. Dr. Partridge felt a fibromyalgia program would be helpful for treatment of the symptoms and furthermore provide sufficient evidence for the hearing officer's determination to perform light work. *Id.*

Lopes argues that fibromyalgia ought be treated like chronic fatigue syndrome, and

once the diagnosis is established the hearing officer must find the claimant "suffers from the symptoms usually associated with th[e] disorder." Pl.'s Mem. at 15; *Rose v. Shalala*, 34 F.3d 13 (1st Cir.1994). In *Rose*, the court disagreed with the hearing officer's finding that the claimant had "possible" chronic fatigue symptoms and that the claimant's subjective symptoms did not rise to a significant level of fatigue, even though the medical evidence compelled a finding of chronic fatigue symptom. *Id.* at 17–18. Here, in contrast, the hearing officer concluded that Lopes *has* a history of Lyme disease and fibromyalgia, but found that the level of incapacity asserted was inconsistent with the record as a whole. R. at 20–21. Due to the hearing officer's acknowledgment of Lopes' impairments, the *Rose* case is not applicable. Moreover, *Rose* is specific to Social Security Ruling No. 99–2p which delineates how a hearing officer is to deal with chronic fatigue syndrome. Def.'s Mem. at 19; 20 C.F.R. § 404.1527; S.S.R. 96–2p, 96–5p. In this case, Lopes does not have chronic fatigue syndrome and, therefore, the hearing officer is not required to give greater weight to claimants that complain of subjective pain.

Lastly, the hearing officer is required to give "good reasons" for his determination. In this case, the hearing officer reasonably explained his decision to "afford[ ] much greater weight" to Dr. Partridge's opinion because he examined and treated Lopes on several occasions, while Dr. Donta's nurse practitioner was the one who examined Lopes. R. at 22 n. 6. Therefore, the hearing officer's decision properly evaluated the medical opinions in the record and there is no error in the amount of weight afforded in the evaluation of the medical records.

### E. CONCLUSION

This Court "must uphold the Secretary's findings in this case if a reasonable mind, reviewing the entire record as a whole, could accept it as adequate to support the Secretary's conclusions." *Agresti v. Secretary of Health and Human Servs.*, 631 F.Supp. 1245, 1248 (citing *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)). This Court rules that a reasonable mind could accept the entire record as adequate to support the hearing officer's conclusions. This Court also holds that the hearing officer's decision was supported by substantial evidence and free from errors of law. *Geoffroy*, 663 F.2d at 319. Accordingly, Lopes' Motion to Reverse or Remand the Decisions of the Commissioner of the Social Security Administration [Doc. No. 12] is DENIED, and the Commissioner's Motion for Order Affirming the Decision of the Commissioner [Doc. No. 14] is ALLOWED.

The request for attorney's fees is DENIED.

SO ORDERED.