Frank P. CONTE, Plaintiff,

v.

Linda S. McMAHON Acting
Commissioner of Social
Security,[1] Defendant.

Civil Action No. 05–12442–WGY.

United States District Court,
D. Massachusetts.

Jan. 30, 2007.

1. On January 22, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d)(1), she replaces former Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Elliot M. Weinstein, Boston, MA, Francis M. Jackson, Jackson & Macnichol, Portland, ME, for Plaintiff.

Gina Y. Walcott–Torres, United States Attorney's Office, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

The plaintiff Frank P. Conte ("Conte") brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). Conte challenges the decision of the Administrative Law Judge ("hearing officer") denying his application for a period of disability, 42 U.S.C. § 416, and disability insurance benefits, 42 U.S.C. § 423.

Conte argues that the Commissioner's decision is legally erroneous and not based upon substantial evidence. In the alternative, Conte argues for a remand to the Commissioner for consideration of additional "new" evidence. Accordingly, Conte asks this Court either to reverse and set aside the Commissioner's decision or to remand his claim for reconsideration. The Court addresses these requests in reverse order.

## I. BACKGROUND

### A. Factual Background

Conte, born on June 9, 1951, is a 55–year–old man who lives with his wife and three grandsons in Amesbury, Massachusetts. Administrative Record ("R.") at 10, 28, 35, 172. Conte has a high school education and attended college for two years, but did not obtain an associate's degree. R. at 29. His past relevant work experience has been as a manager of a shoe store. R. at 30.

Conte first sought treatment at the Lahey Clinic on February 22, 2002 to discuss methods of managing his blood pressure. R. at 174. Dr. Kathleen E. White performed a physical and noted that Conte had back surgery in 1998, with a hemilaminectomy performed for a ruptured disk at L5–S1. *Id.* Conte made no specific physical complaints and Dr. White's only point of concern was significant hypertension. *Id.*

Conte began to complain of back pain on March 14, 2002. R. at 133. An emergency department note from the Anna Jaques Hospital indicated complaints of left flank pain. *Id.* Further exams over the next two months revealed the presence of a kidney stone and resulting inflammation. R. at 130–33. There is no indication of a linkage between the back pain and the subsequent medical diagnoses for kidney pain. During this time, Conte continued to see Dr. White. The physical examinations and medical assessments focused largely on controlling his hypertension, but a notation on July 17, 2002 stating, "[h]is back pain is resolved," reveals that discussions of back pain did occur. R. at 168–73. Dr. White encouraged him to exercise more and to adhere to a low-salt diet. *Id.* Dr. White made the same recommendations on October 24, 2002 and again on

December 2, 2002 after examining Conte for hypertension, kidney stones, and back pain. R. at 160, 165.

On August 21, 2003, Conte saw Dr. Kevin Yeh and complained of left-sided back pain. R. at 155. Dr. Yeh assessed the back pain as likely involving a "musculoskeletal" component, but did not find any spinal tenderness or paraspinal muscle spasm. *Id.* Dr. Yeh prescribed an anti-inflammatory, the muscle relaxant Flexeril, in case of muscle spasms, and physical therapy. *Id.*

During the summer of 2003, Conte's primary care physician changed from Dr. White to Dr. Anita Erler. *Id.* Dr. Erler referred Conte to Dr. Robert R. Sparacio for his back pain complaints. R. at 152. Dr. Sparacio found that the back pain symptoms varied in degree of intensity, but occurred daily and were aggravated by prolonged standing, prolonged sitting, and moderately strenuous exercise. *Id.* Dr. Sparacio's lumbosacal spine examination showed full-range of motion, but increased pain on flexion greater than 50 degrees and on extension greater than 20 degrees. *Id.* A Magnetic Resonance Imaging ("MRI") scan showed a mild diffuse disc bulge at L4–5 and postoperative changes at L5–S1 with severe disc space narrowing and some periradicular fibrosis, but no major disc herniation. R. at 151. Dr. Sparacio performed a similar examination on December 16, 2004 and an additional MRI on January 8, 2005, which showed similar results, with a slight improvement in lumbar flexion to 60 degrees before pain occurred. R. at 242–44. Dr. Sparacio also referred Conte to a specialist, **Dr. Chunbo Cai,** who examined the January 8, 2005 MRI and noted that lumbar function was limited to 50 degrees and extension to 20 degrees. R. at 241. Dr. Cai also noted tenderness in the paraspinal region L–3 to S–1 on the left side of the back. *Id.* Dr.

Cai diagnosed Conte as suffering from lumbago, post-laminectomy syndrome, and spondylosis, while also ruling out facet pain syndrom. *Id.*

Dr. Erler continued to perform physical examinations as Conte's primary care physician. *See* R. at 149, 189. On August 31, 2004, Dr. Erler examined Conte and noted his history of chronic back pain, but found no tenderness in his back and no radicular symptoms with straight leg raises. R. at 189. Dr. Erler stressed the need for exercise to lose weight and concluded that the back pain was likely of a muscular origin. *Id.*

In addition to the medical evaluations performed at the Anna Jaques Hospital and the Lahey Medical Clinic, Conte received three physical residual functional capacity assessments. Dr. Joanne Jones, a state agency physician, performed the first on December 17, 2003. R. at 141–48. Dr. Jones reviewed Conte's medical files and concluded that Conte could lift up to 20 pounds occasionally and 10 pounds frequently. R. at 142. She further determined that he could sit, stand, or walk for about six hours in an eight-hour day, though he was limited to occasional stooping. R. at 142–43.

On February 9, 2004, Dr. Mallavalli Gopal, an advising physician to the Disability Determination Service, performed, on reconsideration, the second functional capacity report. R. at 179–86. Dr. Gopal determined that Conte was capable of performing work at the medium exertional level with only occasional stooping and occasional crouching. *Id.*

Conte's attorney requested a third functional capacity report. R. at 248–53. On March 4, 2005, Dr. Erler referred Conte to Tricia Gagnon Pospisil, a licensed occupational therapist, to conduct the residual functional capacity assessment. *Id.* The report indicated that Conte lacked the

ability to perform the essential functions of his job as a shoe store manager. R. at 251. The report also stated that Conte demonstrated the capacity to meet a light Physical Demand Strength Rating per the Dictionary of Occupation Titles and that he could lift up to 20 pounds occasionally and tolerate 15 minutes of sitting before he needed to alternate positions. *Id.* At the end of the functional evaluation report, Dr. Erler indicated that she agreed with the physical therapy evaluation. R. at 250.

At the administrative hearing, Conte testified that he can no longer work due to his chronic back pain, which includes disk degeneration and periradicular fibrosis at L5–S1 at the site of his earlier surgery and degenerative disk disease at L4–5. R. at 32; *see also* Pl.'s Br. [Doc. No. 10] at 1.

### B. Procedural History

On October 20, 2003, Conte filed for Disability Insurance Benefits pursuant to Title II of the Social Security Act. R. at 76. On December 19, 2003, the regional commissioner of the Social Security Administration denied the claim. R. at 47. Upon a request for reconsideration, the Administration reevaluated Conte's application and denied it again on February 13, 2004. R. at 51. As a result, Conte requested and was granted an oral hearing before Administrative Law Judge Stephen Fulton on April 13, 2005. R. at 26, 54. After the hearing and review of the evidence, the hearing officer found him not disabled within the meaning of the Social Security Act and denied Conte's claim on July 28, 2005. R. at 20–22.

Following the unfavorable decision, Conte petitioned the Social Security Appeals Council for a review of the hearing officer's decision. R. at 254–55. The Appeals Council denied Conte's request for review, making the hearing officer's decision the final decision of the Commissioner

and rendering the matter amendable to judicial review. R. at 5–7. On December 26, 2005, Conte filed the instant action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Compl. [Doc. No. 1] ¶¶ 1–5.

## II. ANALYSIS

### A. Conte's Request for Remand for Consideration of Additional "New" Evidence

#### 1. The Standard for Remand

■ Two statutory requirements must be met to succeed on a motion for remand to review a final decision of a hearing officer in light of new evidence. The evidence must be new and material, and good cause must exist for the failure to present the evidence in the prior proceeding. 42 U.S.C. § 405(g); *Evangelista v. Secretary of Health and Human Servs.,* 826 F.2d 136, 139 (1st Cir.1987).

■ Evidence will be considered material if the Commissioner's decision might reasonably have been different had the evidence been presented at the time of decision. *Falu v. Secretary of Health and Human Servs.,* 703 F.2d 24, 27 (1st Cir. 1983). In addition, the new evidence must be: (1) necessary to develop the facts of the case fully; (2) not cumulative; and (3) essential to a fair hearing. *Evangelista,* 826 F.2d at 139. The party seeking remand bears the burden either to produce the evidence or to make a showing of the nature of the evidence that it would proffer to the hearing officer if remand is allowed. *Falu,* 703 F.2d at 27.

■ Good cause will be found for the failure to present the new and material evidence where the proffered evidence was unavailable at the time of the administrative proceeding. *Bilodeau v. Shalala,* 856 F.Supp. 18, 20–21 (D.Mass.1994) (Gorton,

J.). In a "not strictly adversarial" setting such as Social Security proceedings, a more lenient standard is applied in assessing the responsibility for failure adequately to develop the record. *Evangelista,* 826 F.2d at 142. Despite this leniency, "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided-to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Id.* at 141.

## 2. Applying the Standard

Conte proffers, as new evidence, a collection of disparate and non-sequential medical records from Dr. Patrick Barbier, the Lahey Clinic Medical Center, the Anna Jacques Hospital, and the Lahey Clinic North. Pl.'s Mem. to Remand to Agency for Consid. of Add'l Evidence [Doc. No. 11] ("Pl.'s Mot. to Remand") Exs. A, B.

Conte admits that many of these documents are duplicates of pages already contained in the administrative record. Pl.'s Reply Mem. [Doc. No. 16] at 2. Obviously, the duplicated documents already contained in the administrative record are not new because they were present at the time of the hearing and available for administrative review.

■ The documents that are not duplicates fail for lack of materiality. The medical records contained in the "new evidence" come from the same treating sources considered by the hearing officer and reference the same symptoms and diagnoses. *See* Pl.'s Mot. to Remand, Exs. A, B. Conte argues that materiality is satisfied because the agency subsequently considered these materials along with a renewed application and granted disability benefits. *See* Pl.'s Reply Mem. at 2. Conte appears to argue that since the only difference between the original application, which was denied, and the subsequent ap-

plication, which was granted, was this package of random medical reports, it logically follows that the additional reports provided the critical information on the seriousness of Conte's condition. *See id.* This logic is unpersuasive, however, because one may imagine many factors that could provide sufficient cause for a differing result.

In addition, Conte fails to point to any medical record contained in the "new evidence" that sheds new light on the seriousness of his condition. *See* Pl.'s Mot. to Remand at 1–3. The medical records appear to address only previously discussed physical conditions and impairments. *See id.* Exs. A, B. As a result, the "new evidence" presents cumulative and redundant evidence that fails the requirements for materiality. *See Evangelista,* 826 F.2d at 139.

■ Even assuming the materiality of the supplemental records, the "new evidence" would fail to satisfy the standard for good cause. *See Bilodeau,* 856 F.Supp. at 20–21. With only a few exceptions, the supplemental medical records pre-date the administrative hearing. *See* Pl.'s Mot. to Remand, Exs. A, B. As discussed above, greater leniency is provided for adequate development of the record in a Social Security hearing. *See Evangelista,* 826 F.2d at 142. Here, however, Conte had legal representation, which places less of a burden on the hearing officer independently to develop the record. *See id.* In addition, and more persuasively, the medical records are from the same treating sources that provided medical records for the administrative hearing. Good cause fails in this case because the documents were available at the time of the hearing and no justification was provided for why these records could not have been obtained when similar ones were made available. *See Bilodeau,* 856 F.Supp. at 20–21.

### B. Disability Determination

#### 1. Standard of Review

Review of the Commissioner's Social Security determination is limited by section 405(g) of the Social Security Act, which provides that, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *see also Manso–Pizarro v. Secretary of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The substantial evidence standard is satisfied when, "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (quoting *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981)). Furthermore, factual inferences, credibility determinations, and resolutions of conflicts in the evidence are reserved to the Commissioner. *Id.* Accordingly, this Court must affirm the Commissioner's denial, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodriguez Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir.1987).

#### 2. Social Security Disability Standard

As the claimant, Conte bears the initial burden of showing that he is disabled within the meaning of the Social Security Act. *Deblois v. Secretary of Health and Human Servs.*, 686 F.2d 76, 79 (1st Cir.1982). An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

■ Evidence of impairment is not in itself enough to warrant an award of benefits. *See McDonald v. Secretary of Health and Human Servs.*, 795 F.2d 1118, 1120 (1st Cir.1986). The Social Security Act further provides that, "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has promulgated a five-step sequential analysis used to determine whether a claimant is disabled. *See id.* § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work considering the claimant's age, education and work experience. *Id.*

#### 3. The Hearing Officer's Decision

The hearing officer made the following findings: (1) Conte has not engaged in substantial gainful activity since August 15, 2005; (2) Conte has medically identifiable impairments that limit his ability to do basic work activities; specifically, that he has impairments due to back pain as well as degenerative disc and facet joint disease of the lower lumbar spine; (3) that these impairments are "severe," but

that they do not meet or equal the criteria of any of the impairments listed in Appendix 1 to Subpart P of Regulations No. 4 entitled "Listing of Impairments"; and (4) that Conte's testimony regarding his inability to do any work due to these impairments is not credible in light of the medical evidence presented and Conte's testimony in this case. R. at 19.

The hearing officer concluded that Conte had the residual functional capacity to perform the exertional and non-exertional requirements of work, except for positions involving the need to lift more than 20 pounds at a time and 10 pounds frequently, as well as work involving more than occasional stooping. R. at 20. The hearing officer found that Conte's impairments did not prevent him from performing his past relevant work as a shoe store manager. *Id.* Accordingly, the hearing officer found Conte not disabled as defined by the Social Security Act. *Id.*

### 4. Challenge to the Hearing Officer's Decision

Conte raises four challenges to the hearing officer's decision: the hearing officer (1) failed to accept the evidence of the treating physician; (2) failed to re-contact the treating physician; (3) used an erroneous residual functional capacity assessment with the Vocational Expert; and (4) failed to make a proper analysis of subjective pain. Pl.'s Br. at 1.

### a. Review of the Medical Opinion Evidence

After review of the entire record, the hearing officer concluded that Conte had the residual functional capacity to perform work at the light exertional level with only occasional stooping. R. at 22.

Conte argues that the hearing officer legally erred by not giving controlling weight to and adopting the residual functional capacity assessment of Conte's treating physician. Pl.'s Br. at 2. In advancing this argument, Conte relies upon the residual functional capacity assessment conducted by Pospisil on March 4, 2005. *Id.;* R. at 250–53. Pospisil's residual functional capacity assessment concluded that Conte met a light physical demand strength according to the Dictionary of Occupational Titles, but that his inability to stand, sit, or walk for prolonged periods placed him between sedentary and light physical demand level. R. at 250–53. The hearing officer gave diminished weight to this assessment. R. at 22.

 The threshold issue is whether Pospisil constitutes a "treating source." A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source" who provides the claimant with medical treatment or evaluation on an ongoing basis. 20 C.F.R. § 416.902. Conte does not argue that Pospisil, in her individual capacity, satisfies this definition, but that Dr. Erler, Conte's primary care physician, adopted this assessment through a notation agreeing with its conclusions. Pl.'s Br. at 2; R. at 250. The Commissioner opposes the classification of Pospisil's report as from a "treating source." Def.'s Br. [Doc. No. 12] at 9.

There is little doubt but that Pospisil's assessment would have been "adopted" by Dr. Erler had he directly requested the evaluation. *Cf. Meyer v. Schweiker,* 549 F.Supp. 1242, 1248 (W.D.N.Y.1982) (holding a doctor's statement as from the treating source when the statement was made at the direct request of the treating physician). Here, Conte's attorney requested the evaluation. R. at 248. Nevertheless, Dr. Erler's handwritten endorsement that appears on Pospisil's assessment demonstrates ratification and adoption of the residual functional capacity assessment. This Court, therefore, addresses the hear-

ing officer's treatment of this evaluation as originating from the treating source.

 A hearing officer must evaluate the opinions of the treating source when determining a disability claim. *Social Security Ruling ("SSR")* 96–2p. The hearing officer may give the treating source's opinion controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Thus, the opinion of a treating source is not entitled to greater weight merely because that source is a treating physician. *Rodriguez Pagan*, 819 F.2d at 3. In fact, the hearing officer may opt not to give controlling weight to the treating source if the hearing officer finds the doctor's opinion inconsistent with other substantial evidence in the record. *See Berrios–Velez v. Barnhart*, 402 F.Supp.2d 386, 391 (D.P.R. 2005); *Shaw v. Secretary of Health and Human Servs.*, 1994 WL 251000, No. 93–2173, at \*3 (1st Cir. June 9, 1994). The hearing officer must, however, provide valid reasons for doing so. *See* 20 C.F.R. § 404.1527(d)(2).

 Here, the hearing officer did not give Pospisil's residual functional capacity assessment, ratified by Dr. Erler, controlling weight. *See* R. at 22. The hearing officer found the assessment inconsistent with the record as a whole. *Id.* The decision contains a number of justifications for this treatment. *See id.* Specifically, the hearing officer found that Pospisil's conclusion that Conte would have difficulty tolerating an eight hour work day and has a capacity between sedentary and light was based upon subjective complaints and statements made by Conte that were in conflict with other testimony and facts of record. *See id.* For example, Pospisil's conclusion appeared in conflict with the January 2005 examination by Dr. Cai, as well as Conte's ability to walk with his wife and drive his grandchildren to and from school. *See id.* The decision, therefore, not to give the treating source residual functional capacity assessment controlling weight in light of conflicting evidence in the record will not be disturbed by this Court on review.

Where a treating source is not given controlling weight, the hearing officer must then consider whether the treating source's opinion deserves "substantially greater weight." *See Shaw*, 1994 WL 251000, at \*3. This analysis is performed by weighing the conflicting evidence in accordance with a variety of factors that include: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; and (5) specialization. 20 C.F.R. § 404.1527(d).

The hearing officer mentioned only lack of consistency as a reason for the diminished weight given to the treating source opinion. R. at 20–22. Conte argues that the failure to address specifically each factor constitutes legal error. Pl.'s Br. at 5. The list of factors, however, is non-exhaustive and presents the quintessential balancing test. *See* 20 C.F.R. § 404.1527(d). This is not a case where the hearing officer neglected to perform the balancing, but a case where the hearing officer chose to stress one factor over others. Conte would have this Court re-weigh the evidence in light of the other factors contained in the regulations. Pl.'s Br. 4. This Court, however, is limited by the standard of review, which requires only that the hearing officer's findings be supported by substantial evidence. *Ortiz*, 955 F.2d at 769 ("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts.").

■ Substantial evidence exists for the hearing officer's decision to weigh consistency as the dispositive factor in diminishing the weight of Pospisil's evaluation. As discussed above, Pospisil's evaluation contradicts other evidence in the record, including Conte's own testimony as to the ability to sit for 45 minutes, walk for 45 minutes to an hour, and drive for up to an hour. R. at 34–37. The evaluation also appears inconsistent with Dr. Cai's medical evaluation in January 2005. R. at 241. A reasonable mind could accept this evidence as supporting the hearing officer's decision to diminish the weight given to Pospisil's evaluation. *See Ortiz*, 955 F.2d at 769.

■ Finally, substantial evidence also exists to support the use of the residual functional capacity assessment performed by Dr. Jones. *See* R. at 21–22. The adoption of evaluations made by non-examining physicians, who evaluate the medical evidence for a state agency, over that of a treating physician should be looked upon with disfavor. Here, however, this Court has no basis upon which to question the Commissioner's decision to credit the former over the latter. Dr. Jones concluded that Conte had the capability to perform work at the light exertional level with only occasional stooping. R. at 22. In support of this determination, the hearing officer cites the assessment by Dr. Gopal who concluded a capability of performing at the medium exertional level, as well as the medical examination of Dr. Cai and the testimony of Conte at the hearing. R. at 21. A reasonable mind could accept this evidence as supporting the hearing officer's decision to adopt the residual functional capacity assessment of Dr. Jones. *See Ortiz*, 955 F.2d at 769.

### b. The Duty to Re–Contact a Medical Source

■ As part of the hearing officer's duty to develop an adequate record, a duty exists to re-contact a medical source if the information provided is inadequate to address the question of disability. 20 C.F.R. § 404.1512(e); *SSR* 96–5p. This regulation applies only where a lack of evidentiary basis for a treating source's opinion exists that makes the adjudicator unable to ascertain the basis of the opinion. *See Bruso v. Barnhart*, 2005 WL 1528765, No. 04–CV–240–PB, at *9 (D.N.H. June 29, 2005).

■ Conte argues that the hearing officer was required to re-contact Pospisil fully to understand why she assessed Conte as more limited than the conclusion provided by Dr. Jones. Pl.'s Br. at 6. Conte misstates the issue. The hearing officer did not fail to understand Pospisil's assessment or its factual foundation, but made a credibility decision that found Dr. Jones's evaluation more consistent with the record as a whole. *See* R. at 20–22. Thus, no duty to re-contact arose.

### c. Vocational Expert Testimony

The third challenge brought by Conte to the administrative ruling is that the Vocational Expert's testimony is irrelevant because the hearing officer proffered a hypothetical based upon an improper residual functional capacity assessment. Pl.'s Br. at 6. This Court has already held that the hearing officer supported his decision to adopt the residual functional capacity assessment provided by Dr. Jones with substantial evidence. Since the residual functional capacity assessment presented to the vocational expert by hypothetical is not improper, the question as to the relevancy of vocational expert's testimony need not be reached.

### d. Evaluation of Subjective Complaints

■ In addition to objective medical reports, the hearing officer's determi-

nation of disability must take into account the subjective pain of the claimant that is reasonably consistent with the medical evidence. 20 C.F.R. § 404.1529; SSR 96–7p. The hearing officer must evaluate subjective pain in accordance with the following six factors: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. *Lopes v. Barnhart,* 372 F.Supp.2d 185, 192 (D.Mass.2005); *see also Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 27–30 (1st Cir.1986). The hearing officer's findings and evaluation of these factors are entitled to deference due to his observation of the claimant, the evaluation of his demeanor, and the consideration of how the testimony fits in with the rest of the evidence, especially when supported by specific findings. *Frustaglia v. Secretary of Health and Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

■ This Court has reviewed the entire record and concludes that the hearing offer's findings on these factors are supported by substantial evidence. The hearing officer credited testimony from Conte describing his deteriorated disk in his back. R. at 19, 32. The hearing officer also elicited testimony that showed Conte's pain generates on the left side, and that it gets very severe about three to four times a month. R. at 33–34. This satisfies the first factor. The second factor is satisfied by testimony that shows the aggravating effect of cold, damp weather, activities that involving twisting, and prolonged sitting. R. at 34. The decision of the hearing officer notes the use and dosage of Advil to ameliorate severe pain. R. at 21–22. This satisfies factor three. The fourth factor is satisfied by the hearing officer's discussion in the opinion about the nonmedical treatment effects of heated car seats that Conte testified helps alleviate back pain while driving. R. at 21. The hearing officer satisfied factor five by eliciting testimony from Conte about his responsibilities as a manager of a shoe store and the functional limitations caused by his back pain. R. at 31–32. Finally, Conte provided testimony about his daily routine and daily activities that were specifically noted in the administrative decision and are sufficient to satisfy factor six. R. at 21, 35–36.

This Court has previously ruled that no grounds existed for reversal when the hearing officer omitted one factor, but adequately attended to the other relevant factors. *See Lacroix v. Barnhart,* 352 F.Supp.2d 100, 115 (D.Mass.2005). Where, as here, the hearing officer considered all of the subjective pain factors, credits the testimony by finding a severe impairment resulting from back pain, but does not find that the impairment reaches the level of a disability, this Court will affirm the decision as supported by substantial evidence. *See* R. at 19.

## III. CONCLUSION

Accordingly, the Motion to Remand for Consideration of Additional Evidence [Doc. No. 11] is DENIED. The decision of the Commissioner of Social Security is AFFIRMED.

SO ORDERED.